I have three points that I need you to accept if I'm going to win this case. And as tempting as it is to jump to the third point and spend ten minutes ranting about unconscionability, I think that would be more annoying than useful. So let me walk you through my points. The first point I need you to accept is that there is a difference between the courts trying to dictate to a federal agency its day-to-day operating policies, on the one hand, and the courts, on the other hand, saying, if you don't do this, we're going to let this fellow discharge your debt. Now, I think that difference is obvious, but neither the bankruptcy court nor the district court were willing to recognize that there was a difference. They both characterized the relief that my client wants as trying to get the courts to order the agency to let my client serve out the rest of his time. But I believe there is a difference. And in any event, this distinction is not my original invention. It's the specific relief that was fashioned by the court in the Kephart case, which I cite in my brief. Now, the second point I need you to accept, if I'm going to win, is that this case doesn't have anything to do with undue financial hardship. This is a case under 42 U.S.C. 2540, which says that the debt can be discharged if collecting it is unconscionable. It's not a case under 11 U.S.C. 523.8, which has the undue financial burden element. Now, I agree there are plenty of cases that compare 523.8 and 42 U.S.C. 2540 and basically say that in the context of financial hardship, Section 2540 is kind of a souped-up version of Section 523.8. But I don't see anything in the language of Section 2540 that says that if it's unconscionable, to collect the debt for reasons not having to do with financial hardship, that the debtor cannot get relief. And I think we could all agree that, for example, if we were trying to collect this judgment from Bill Gates, even though he could afford to pay it, the fact that he doesn't owe it would render it unconscionable to do that. So I think that's the second point. So now we get to unconscionability. And all I can tell you is that I really do regard it as shockingly unfair for the government to try and collect treble damages from somebody who has done 77 percent of his 100 percent commitment and who is ready, willing, and able to serve out the balance. How many opportunities has he had to fulfill his commitment? Multiple. And I agree. He has had multiple opportunities. But the case law shows various other scholars in similar situations have been given multiple opportunities to serve out this case. But he's had opportunities that he's refused. He's had opportunities that he did refuse. He has, for want of a better term, repented of some of the positions he's taken in the past. He is ready, willing, and able to complete his obligation. And we do regard it as unfair for the government not to let him. But we do recognize that the plenty of chances that he's had are a problematic aspect of this case. Nevertheless, we still regard the government's position in this case as basically saying we don't have to, we're not going to, you can't make us. And I think that the government could say, we did, we tried, we gave you every opportunity, and you each time refused. On this record, can't they? You could come to that conclusion. But if we look at the last opportunity that he had, after he was terminated from his position in Oklahoma, he immediately went out and found an alternative position. Oh, he found what he considered an alternative position. He found a position that would have been an acceptable position if they had placed him there. They refused to place him. He relocated his family back to California, which was where he was from. And six months later, they assigned him to that position. And at that point, and my client has some mental health problems, a history of them. And at that point, he was unable medically to relocate and accept that position. And it's unfortunate that he wasn't. But he is ready, willing, and able to finish up his obligation. You know, one reading this record could conclude that the efforts that he took after he selected what he thought was a comparable spot, he took prematurely, because it's not a unilateral decision, is it? He took the benefits, he received them, and he had some obligations. But it looks from this record that his opinion was, I define what my obligation is. Well, he tried to do that originally, and he sued the government, creating precedent that is still cited for the proposition that this is a statutory obligation, not a contractual obligation, and that it doesn't matter whether the government breached its contract with him, that he still has to perform. And after that case, he did undertake to perform, and he committed 37 of the 48 months that he owes the government. And he's just looking for a chance to complete that out. And he does regard it as unfair that the government won't give him an opportunity to do that, and instead insists on collecting treble damages from him. I'm going to reserve some time now, unless you have questions you want to ask right now. Thank you. Anna Maria Martel. May you please the court. Good morning. My name is Anna Maria Martel. I'm an assistant United States attorney. Your Honor, the question before you is not whether it's unconscionable to deny Dr. Hatcher yet another opportunity. The facts are very clear. Dr. Hatcher is going to do everything he can think of to avoid paying this debt. In 1991, Judge Beeser was part of a panel that found that as a defaulted scholar, Dr. Hatcher had to pay more than half a million dollars. That that was the only remaining duty he had. He had no right to serve because he had repeatedly, he had been assigned, he refused to go, he had been given repeated amnesty opportunities, and he refused them. So then this court said, sorry, but you must pay more than half a million dollars. The treble damages is not unconscionable. It is a severe penalty to ensure that these doctors go where they're placed, not where they want to go, or not go at all. After the United States started garnishing and attaching his income, Dr. Hatcher had an epiphany, and he begged for the right to serve. His debt was then about $700,000, and the United States very generously allowed him to serve where he asked. He wanted to serve in the Bureau of Prisons. They placed him in the Bureau of Prisons. His contrition lasted a very short time. Pretty soon he is very disruptive. The Bureau of Prisons thinks, well, maybe if we transfer him, things will get better. So they transfer him to another facility, and things continue just as disruptive. His conduct is totally unacceptable. So they put him at home for six months, pay him full salary for six months. He gets credit for service for six months. He gets terminated. And then he does what he had done earlier. In the first decision in this case, in the United States v. Hatcher, the court concluded that Hatcher was responsible for his own misfortunes because he had sent letters to the wrong people. He does it again. He goes directly to the Indian Health Service and applies for a position and assumes that now he's going to serve his service. The public health officer says, apply and we will replace you. He applies. They place him. And then the medical records show not that he's incapable of going. The medical records show that he gets very anxious thinking about going back to the Bureau of Prisons. And the medical records show that he decides he is going to try to obtain a medical waiver, a discharge of his debt as a medical waiver. And if that doesn't work, then he's going to file for bankruptcy. When he filed for bankruptcy, the facts below, which are uncontested, were that in 1996 his debt was $239,000. In the six years following that, Dr. Hatcher made $1,180,000. And his wife, who was a nurse, did not work outside the home. And he paid almost nothing. She paid from her household money. And when they separated and divorced, he stopped paying. And then he went to court and said it's unconscionable that they will not force the Indian Health Service to take me, although he's no longer qualified to work in the Indian Health Service. And there are documents on the record that show that he does not qualify because he doesn't have the right kind of residency. And I would ask the court to look at page 150. You're unhappy with Dr. Hatcher. Your Honor, I have been trying to collect from Dr. Hatcher for seven years. Let me go to some of the, if we leave these circumstances aside, there are some other issues in the case. Do you think that the government could decline to perform, in other words, say we're not going to place you anywhere and still collect the money? No, no, Your Honor. And that's not what happened here. No, I'm not saying that. No, no. Absolutely not. So what is your view of what the government, if a doctor is terminated from a position, how do you view that in terms of his payback obligations? He received credit for six months more than he worked. And he was placed in another position. No, no, I'm not talking about this situation. I'm talking about generically. Let's say you place a doctor and the doctor is terminated from the agency for whatever reason. What's the typical procedure you have? There haven't been that many of those, Your Honor, but the reported decisions show that the agency will try to place the person again, which is what they did with Dr. Hatcher. He requested another placement and he was granted the other placement and he chose not to go. Do you believe the government has the option upon termination to say we're not going to try to place you again? Your Honor, the case law makes it very clear that once a doctor defaults, he does not have the option of service. And that's not something that the public health service has said. That's something that all of the courts have told us. So the fact that we allowed him basically three opportunities to serve after you said he was in default was going beyond what was required in the United States. Your view under the statute is that the government is obligated to try to place in the first instance. Yes. But it's not legally obligated beyond that. After default. And do you consider termination to be a default? No. No. A default is when the doctor refuses to serve like Dr. Hatcher has. I think we have your argument in hand. Thank you. Thank you very much. Thank you. I'll close this up fairly quickly. We don't contend that the government doesn't have the technical legal right outside of bankruptcy to say we're not going to let you serve again. We do not have the ability to sue them and get a judgment that says you shall assign him because the courts don't have the ability to dictate to a federal agency its day-to-day operations. We do still regard it as unfair for the government to insist on collecting treble damages from somebody that's willing to complete his service obligation. And they could place him, even if they can't place him, within the National Health Service. Section 42 U.S.C. Section 254N allows them. You see the problem or the argument on Mr. Jenkins? Didn't you kind of think about that before you made it? It isn't that the government is unwilling to do it. It's that they did it, and they did it, and they did it, and he refused to serve. Isn't that what this record shows? Certainly the record shows that there have been problems with Dr. Hatcher's performance to date. I can tell you that I have counseled him as bluntly as I can. No, you don't have to tell me what you're counseling because we don't want you to violate whatever rights you had. Well, thank you, Your Honor. But I'm saying to you, it's what you stated is not what this record shows. This record shows what the government has indicated. And perhaps I'm jaded because I've spent my entire career practicing in bankruptcy where people get last chances. Sometimes they get five and six last chances. And I know more about poor than you do than you'll ever know. So we don't want to get into that. I know about poor. Thank you, Your Honor. I'm going to submit now, unless you have more questions. How would you define inconscionability? Do you think we ought to import the Sixth Circuit definition? I think it really doesn't matter what linguistic definition you use. I think it's a very difficult... When we see it, is that it? I think that's about as close as I could get you to seeing it. And there's no... The Jesuit education notwithstanding, there's no syllogistic argument I can lay out where I can prove inconscionability to you. I'm going to have to trust you to your consciences. And I think that if you think this is unfair, you will say so. And if you think this is not unfair, you'll say that too. And I think you could give me another half hour. Tell me one question that I'd sort of like to put in the mix in terms of your argument. If he pays the government, is that a taxable deduction to him on his income tax? Or does he have to pay it out of after-taxed income, like most law students who get a loan during law school go back and get a job and they find out, God, I've got to pay it back, but I've got to pay the income tax first. I believe that it is... that he has to pay it back out of taxable income. And pay tax on the income to pay it back. And this... I mean, I see this situation come up in the tax setting sometimes. And I don't think this debt is quite at that point. But sometimes you can owe so much in taxes that it's not mathematically possible to make enough money to pay the taxes without owing just as much tax on the new money. And anyway, I'm almost out of time. Thank you for your time, and good day. Thank you, Mr. O. Lewis. Lewis got into that situation. Yes. Good day. Well, you know, both of you have been at this case a long time, and we will make our decision, but maybe the two of you should talk about some settlement today while you have the opportunity as well. You're both here, and just a suggestion, we're going to do our jobs as well. But it's something to think about. Thank you, Mark. Always a pleasure.
judges: Farris, Beezer, Thomas